UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIR LINE PILOTS ASSOCIATION, INT'L, <br> Petitioner, <br><br> v. <br><br> FEDERAL EXPRESS CORPORATION, <br> Respondent. | Civil Action No. 1:14-cv-00944-RDM |

## MEMORANDUM OPINION

In this case, plaintiff, Air Line Pilots Association, Int'l ("ALPA"), brings an action against Federal Express Corporation ("FedEx") seeking to compel FedEx's compliance with an arbitration award issued by a System Board of Adjustment ("System Board" or "Board"). Compl. 1. FedEx responds with a counterclaim against ALPA, seeking a declaratory judgment that its current dispute with ALPA qualifies as a "minor dispute" under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq., which the System Board has exclusive jurisdiction to resolve under Section 204 of the RLA, 45 U.S.C. § 184. This matter is before the Court on plaintiff's motion for judgment on the pleadings, or for summary judgment in the alternative, and on defendant's motion for summary judgment.

For the following reasons and after consideration of the parties' briefing and relevant legal standards, ALPA's motion for judgment on the pleadings or, in the alternative, motion for summary judgment will be DENIED, and FedEx's motion for summary judgment will be GRANTED.

**I.   BACKGROUND**

1

Defendant FedEx is a corporation engaged in the business of worldwide package delivery and is considered a "common carrier by air" engaged in the business of providing air services in interstate commerce under the RLA, 45 U.S.C. § 181. Compl. 1–2; Answer 5.

Plaintiff ALPA is an unincorporated labor organization and is the exclusive bargaining representative of pilots employed by FedEx. Compl. 1; Answer 5. ALPA and FedEx are parties to a collective bargaining agreement ("CBA"), effective 2011, which establishes the wages, benefits, and working conditions of FedEx pilots. Compl. 3; Answer 2. The CBA specifically governs the assignment of flying duties to all active pilots at FedEx. Def.'s SOMF 1, ¶ 2.

In furtherance of Section 204 of the RLA, Section 21 of the CBA establishes an arbitration panel—the System Board—to issue final and binding decisions regarding disputes "growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." Pl.'s SOMF 2, ¶ 6.

FedEx hired Captain Patricia Ahneman as a pilot in 1990 and terminated her employment in June 2013 for (1) "operating FedEx aircraft without being in possession of a valid medical certificate during 2008 and 2009" in a manner "'without justification, inexcusable and constituted intentional or reckless disregard' of FAA regulations, FedEx rules and the CBA," and (2) providing "dishonest testimony" in the internal hearing prior to her termination. Def.'s SOMF 2, ¶ 7.

Ahneman challenged her termination, and the System Board heard the dispute in September 2013. Compl. 4, ¶ 14; Answer 8, ¶ 14. The Board issued a final Decision and Award ("Award") in November 2013 and sustained Ahneman's grievance. Compl. 4, ¶ 15; Answer 6, ¶ 7. It held that "[t]he grievant shall forthwith, no later than 10 days from the date of this decision, be reinstated to her former position and made whole." *Id.*

Within the 10-day period, FedEx presented Ahneman with a baseline payment and reinstated her to her former position: an active pilot in not operationally qualified ("NOQ") status, under which pilots are paid but not assigned flying duties. Def.'s SOMF 3–4. Ahneman had entered NOQ paid status in December 2012 after failing a line check and remained in this position until her termination in June 2013. *Id.*

Since the Board's Award, FedEx has also allowed Ahneman to bid for and be awarded "pay only" schedules that provide around $20,000 in wage-based compensation each month. *Id.* at 5, ¶ 2. In sum, as of the initiation of this litigation, Ahneman has received over $100,000 in backpay and over $250,000 in ongoing compensation. She has also received all benefits to which active pilots are entitled. *Id.* at 6, ¶ 23.

Around two months after the Board issued the Award, an ALPA representative asked FedEx when Ahneman could enter a training program and exit paid NOQ status. *Id.* at 6, ¶ 27. FedEx promptly responded that the issue was "still under review" (Tice Supp. Dec. ¶ 10) and later informed ALPA that FedEx was discussing whether it would be willing to assign Ahneman flight duties due to safety concerns. *Id.* ¶ 11.

In late February 2014, FedEx made the decision not to retrain Ahneman or assign her flight duties for the remainder of her career because of safety and operational concerns. *Id.* ¶ 15; *see also id.* ¶ 20 (noting that Ahneman will turn sixty-five in October 2016 and thus will become legally ineligible to pilot the aircraft used in FedEx's operations). FedEx asserts that these concerns were based on Ahneman's "employment and training record" and were "distinct from the basis of her June 2013 termination and the System Board Award." Def.'s SOMF 7, ¶ 33.

The current dispute between ALPA and FedEx arose from this decision by FedEx to not assign Ahneman flying duties and to leave Ahneman in her former position of paid NOQ status.

3

ALPA contends that Ahneman has not been fully reinstated because she has not been permitted to fly. In later memoranda before this Court, ALPA also argues that Ahneman has not been "made whole" because FedEx's refusal to assign her flights duties has supposedly caused a diminution of her potential earnings. *See* Pl.'s Opp'n Def.'s Mot. Summ. J. 6 ("As a FedEx pilot flying its aircraft, Captain Ahneman could have earned additional compensation under various provisions of the CBA.").

After FedEx informed ALPA of its decision to not assign Ahneman flying duties, the parties engaged in a settlement discussion in attempt to resolve all claims and issues. Tice Supp. Dec. ¶ 19. No agreement was reached, however, and ALPA initiated this litigation in June 2014.

## II.   JUDGMENT ON THE PLEADINGS

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings should only be granted "where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Schuchart v. La Taberna Del Alabardero, Inc.*, 365 F.3d 33, 35 (D.C. Cir. 2004) (internal citation omitted); *see also Konah v. District of Columbia*, 915 F. Supp. 2d 7, 18 (D.D.C. 2013) ("A motion for judgment on the pleadings will be granted if the movant shows, at the close of the pleadings, that no issue of material fact remains to be resolved, and that he or she is entitled to judgment as a matter of law.").

Similar to the Rule 12(b)(6) standard, *see Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 12 (D.D.C. 2008), *aff'd*, 417 F. App'x 4 (D.C. Cir. 2011) ("The appropriate standard for reviewing a motion for judgment on the pleadings is the same as that applied to a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be

granted."), this Court will dismiss a complaint under Rule 12(c) if the complaint does not contain sufficient factual allegations to "state a claim that relief is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is considered "plausible on its face" if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotations omitted). The facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In evaluating a party's motion to dismiss pursuant to Rule 12(c), a court must accept all factual allegations contained in the complaint as true. *Id.* The court may not rely on facts outside of the pleadings and must construe all facts in the light most favorable to the non-moving party. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004); *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992). "The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record." *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 47 (D.D.C. 2005) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

Accepting all facts pleaded as true, and viewing all inferences in a light most favorable to FedEx as the non-moving party, the Court finds that FedEx's counterclaim presents sufficient factual allegations to raise the right to relief above the speculative level. Thus, ALPA's motion for judgment on the pleadings with respect to FedEx's counterclaim will be DENIED.

Also, the Court finds that ALPA's complaint does not demonstrate that it is entitled to judgment as a matter of law. ALPA's motion for judgment on the pleadings with respect to its claims against FedEx will be DENIED.

### III. SUMMARY JUDGMENT

#### A. Legal Standard

According to Federal Rule of Civil Procedure 56, a court shall grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In determining whether a genuine issue of fact exists, the court must view all inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Facts are considered "material" if they might affect the outcome of the case, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), and factual disputes are "genuine" if a reasonable jury could potentially return a verdict for the non-moving party. *Id.* at 248.

A party in opposition to a motion for summary judgment must present more than "the mere existence of a scintilla of evidence," *Konah*, 915 F. Supp. 2d at 18, and "may not rest upon the mere allegation or denials of the adverse party's pleading," but must present "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248; Fed. R. Civ. P. 56(e). The opposing party must point to "affirmative evidence" that demonstrates the existence of disputed material facts in order to avoid summary judgment. *Anderson*, 477 U.S. at 256–67.

#### B. ALPA's Claim

##### i. *Legal Standard*

Under the RLA, a winning party at arbitration can seek enforcement of the award if the losing party does not comply with the award's terms. 45 U.S.C. § 153 First(p). The scope of judicial review of RLA system board awards, however, is "amongst the narrowest known to law." *Northwest Airlines, Inc. v. ALPA*, 808 F.2d 76, 80 (D.C. Cir. 1987).

The RLA provides three specific grounds for refusal to enforce such awards: (1) failure by the system board to comply with RLA requirements; (2) failure by the system board to confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption by a member of the system board. 45 U.S.C. § 153 First(p). If a party fails to comply with a system board decision that does not fall under one of the three preceding categories, district courts are authorized to enforce the decision and compel the party's compliance. *Id.*

Under specific circumstances, however, courts cannot "enforce" an arbitration award due to a lack of jurisdiction. First, district courts do not possess subject matter jurisdiction to enforce an ambiguous system board award. *See Bhd. Ry. Carmen v. Atchison, Topeka & Santa Fe Ry. Co.*, 956 F.2d 156, 160 (7th Cir. 1992) ("[T]he judicial duty to enforce an arbitration award . . . is neither a duty nor a license to interpret [the award]."); *Air Line Pilots Ass'n v. Trans World Airlines, Inc.*, 966 F. Supp. 870, 872–73 (E.D. Mo. 1997) ("If ALPA is seeking an interpretation of the Award, the Court agrees with [the defendant] that [the court] is without subject matter jurisdiction. The proper forum for such an interpretation is undoubtedly the System Board."). If an arbitration award is so "vague and indefinite that [it] cannot reasonably be enforced," then the award must be remanded to the Board for clarification. *Bhd. R. Carmen v. Belt R. Co.*, 658 F. Supp. 136, 138 (N.D. Ill. 1987).

The RLA provides a mechanism for parties to return to the system board that issued an award for interpretation when disputes arise. *See* 45 U.S.C. § 153 First(m) ("In case a dispute arises involving an interpretation of the [system board] award, the division of the board upon request of either party shall interpret the award in light of the dispute."). Thus, the original system board that issued the decision, not a district court, is the proper forum for parties seeking interpretation of an ambiguous award.

Also, district courts may not "enforce" an arbitration award if in doing so it would be required to interpret the parties' collective bargaining agreement or past business practices. *See Am. Train Dispatchers Dep't v. Norfolk S. Ry. Co.*, 857 F. Supp. 1276, 1280–82 (N.D. Ill. 1994) ("If an arbitral award raises bona fide interpretation questions in the wake of post arbitration conduct, those inquiries must be satisfied by the appropriate adjustment board, not by a district court."). This issue would amount to a "minor dispute" under the RLA, and thus fall within the exclusive jurisdiction of the system board. 45 U.S.C. §§ 153, 184.

### ii.   *Analysis*

ALPA and FedEx agree that the three statutory grounds for not enforcing a board award do not apply here. Pl.'s Mot. J. Pleadings 9; Def.'s Mem. Supp. Summ. J. 27. The Board complied with RLA requirements, had jurisdiction to issue its decision and award, and was not tainted by fraud or corruption. *Id.*

The Board's award—that the grievant be "reinstated to her former position and made whole"—is, however, arguably ambiguous with respect to Ahneman's future training and flight assignments. Though ALPA claims that the award is "unambiguous and clear on its face," CC Answer ¶¶ 18–19, the parties unmistakably do not agree on the meaning of "reinstate," and the Board does not define "reinstate" in its opinion. FedEx claims that it has fully "reinstated" Ahneman because it returned Ahneman to her former position as an active pilot in paid NOQ status and provided her with all required backpay, benefits, and ongoing compensation. Def.'s Mem. Supp. Summ. J. 13–16. ALPA, in contrast, claims that FedEx has not "reinstated" Ahneman because it refuses to retrain her and assign her flight duties. Pl.'s Opp'n Def.'s Mot. Summ. J. 4–5.

The plaintiff concedes that this dispute "concerns the meaning of the word 'reinstatement.'" *Id.* at 4. The plaintiff also defines "reinstate" as "to put someone back in a job or position that had been taken away"—exactly what FedEx purports to have done. Pl.'s Mot. J. Pleadings 11. Under the RLA procedure outlined in Section 153, ALPA could have remanded the interpretation issue to the Board, yet it chose not to do so. 45 U.S.C. § 153; Answer 8, ¶ 18. It now asks this Court to enforce a seemingly ambiguous award with respect to its requested relief, which the Court cannot do.

ALPA also urges this Court to "fill in the details" of the Board's "general principle of relief." Pl.'s Mot. J. Pleadings 18. But this Court cannot "fill in the details" or "make ordinary interpretations of the award" in this instance without interpreting the Agreement and the parties' prior practices. Unlike in cases referenced by ALPA, the dispute at hand involves new factual issues and requires interpretation of the CBA. *See Bhd. of Locomotive Eng'rs & Trainmen v. BNSF Ry. Co.*, 549 Fed. Appx. 780 (10th Cir. 2013) (enforcing an award that required no additional interpretation of the parties' agreement); *Continental Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 555 F.3d 399 (5th Cir. 2009) (addressing the same issues previously presented to the arbitration board); *Northwest Airlines, Inc.*, 808 F.2d 76 (same); *Belt R. Co.*, 658 F. Supp. 136 (same).

In contrast with the cases cited by ALPA, FedEx did not challenge the award or refuse to abide by it. Pl.'s Mot. J. Pleadings 12–17 (citing *Cont'l Airlines, Inc.*, 555 F.3d at 399; *NetJets Aviation, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 486 F.3d 935 (6th Cir. 2007); *Northwest Airlines, Inc.*, 808 F.2d at 76). FedEx reinstated Anheman to the extent that the Board's decision unambiguously mandated it: FedEx returned the pilot to her former position and has continued to pay her accordingly.

Furthermore, unlike in the cases cited by ALPA, the specific disputed issue—Ahneman's flight assignment and training—was not before the original Board. Def.'s Memo. Supp. Mot. Summ. J. 18–19. Consequently, the Board's decision is silent as to whether Ahneman is entitled to retraining and flight assignments. *See FOP Metro Transit Police Labor Comm., Inc. v. Wash. Metro. Area Transit Auth.*, 780 F.3d 238, 243 (4th Cir. 2015) (finding the arbitration award silent on the issue before the court because the issue was never before the arbitrators). This factor—the Board's silence on the disputed issue—transforms interpretation of the arguably ambiguous award into a "minor dispute" under the RLA.

In sum, this particular dispute regarding the meaning of "reinstate" and whether FedEx must assign flight duties to Ahneman unavoidably involves interpretation of the CBA and the parties' prior practices, which qualifies the dispute as "minor" according to the RLA and pushes the disagreement outside the realm of this Court's jurisdiction. The issue of Ahneman's possible retraining and flight duty assignments was not before the Board and involves interpretation of the parties' CBA. Therefore, the issue before this Court is a "minor dispute," which precludes "enforcement" of the Award as requested by plaintiff. Further implications of the issue's classification as a minor dispute are discussed in the following sections.

### C. FedEx's Claim

#### i. *Legal Standard*

Congress enacted the RLA in order to promote efficiency and stability amongst carriers and employees. 45 U.S.C. § 151a. In furtherance of this goal, the RLA requires parties to resolve "minor disputes" through arbitration. *Kulavic v. Chicago & Ill. Midland Ry. Co.*, 1 F.3d 507, 512 (7th Cir.1993). The RLA deems disputes "growing out of grievances, or out of the interpretation

or application of agreements concerning rates of pay, rules, or working conditions" to be "minor disputes." 45 U.S.C. §§ 153 First(i) & 184.

Minor disputes are within the exclusive jurisdiction of system boards. *See Consol. Rail Corp. v. Ry. Labor Execs. Ass'n ("Conrail")*, 491 U.S. 299, 303–04 (1989) ("A minor dispute in the railroad industry is subject to compulsory and binding arbitration before the National Railroad Adjustment Board, § 3, or before an adjustment board established by the employer and the unions representing the employees. . . . The Board . . . has exclusive jurisdiction over minor disputes.").

The Supreme Court of the United States has established a "relatively light burden" on a party asserting a "minor dispute" and thus claiming the exclusive arbitral jurisdiction under the RLA. *See id.* at 307 ("Where an employer asserts a contractual right to take a contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement."). According to the Court in *Conrail*, a minor dispute "relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case." *Id.* at 303.

"If the disputed action of one of the parties can arguably be justified by the existing agreement . . . the controversy is a minor dispute within the exclusive province of the National Railroad Adjustment Board." *Id.* at 306 (internal citation and quotations omitted). Additionally, "[C]ollective-bargaining agreements may include implied, as well as express, terms," and "it is well established that the parties' 'practice, usage and custom' is of significance in interpreting their agreement." *Id.* at 311.

Specifically, "If an arbitral award raises bona fide interpretation questions in the wake of post arbitration conduct, those inquiries must be satisfied by the appropriate adjustment board,

not by a district court." *Am. Train Dispatchers Dep't*, 857 F. Supp. at 1280–82. It is not the duty of district courts to define the scope of an arbitration award when doing so involves interpretation of the parties' collective bargaining agreement. *Id.* at 1282. For when there is a genuine disagreement regarding the meaning of an award, and such a disagreement involves interpretation of the agreement, then "such disagreement amounts to a minor dispute" that must "be resolved by arbitration, not by judicial interpretation." *Id.*; 45 U.S.C. § 153 First(i); *see also Belt R. Co.*, 658 F. Supp. at 139 ("The court can and should resolve any issues of lack of clarity or ambiguity unless those issues implicate an area which is within the special expertise of the Board, such as interpretation of the collective bargaining agreement or the actual merits of the claim.").

### ii. *Analysis*

In this case, FedEx has met the "relatively light burden" established by the Supreme Court and has demonstrated the existence of a minor dispute between the parties. FedEx contends that it has discretion to withhold a pilot from training and flight assignments with pay. It bases this claim on the parties' CBA and past practices. Maxwell Decl. 5–6. FedEx also asserts that it is "aware of no situation where ALPA challenged FedEx's discretion in this area" prior to the current litigation. Def.'s Mot. Summ. J. 24.

ALPA, on the other hand, disputes the contractual authority of FedEx to withhold a pilot from training. Pl.'s Answer CC 6, ¶ 13. It additionally claims that "[a]ny ambiguity about the meaning of 'reinstatement' has been 'manufactured' by FedEx solely to delay relief and to undermine the statutory dispute resolution process established by the RLA." Pl.'s Mot. J. Pleadings 19. But there is no evidence that the defendant has "manufactured" the ambiguities in

this case to delay relief. As previously discussed, FedEx complied with the Board's decision to the extent that the award was unambiguous.

Unlike in cases cited by the plaintiff, ALPA has not pointed to any proof that FedEx is attempting to circumvent the Board's decision or is refusing to comply with the order. *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 500 F.3d 591, 593 (7th Cir. 2007); *Bhd. of Locomotive Eng'rs v. Union Pac. R.R.*, 822 F. Supp. 2d 793, 799 (N.D. Ill. 2011). Rather, there is an obvious disagreement at hand regarding the meaning of "reinstate" with regard to FedEx's decision not to retrain Ahneman—a dispute necessarily involving interpretation of the CBA.

Conversations between representatives of FedEx and ALPA demonstrate that they did not agree on whether flight assignments were mandated by the Board's award. Def.'s Memo. Supp. Mot. Summ. J. 6–7. FedEx did not promise at any point that the grievant would be retrained. Rather, it made the decision to not train her based on reasons independent from the issues previously before the Board. *Id.* at 11. FedEx believed that under the CBA, no pilot is entitled to training or flights assignments when FedEx has safety concerns. Maxwell Decl. 5–6. This indicates FedEx's sincere belief that this decision was within its professional discretion, based on the Agreement and past business practices.

Thus, FedEx could not have known to ask the Board for clarification of the Award because it believed that it did reinstate Ahneman and made a separate decision within its contractual rights to not schedule her flights. Def.'s Memo. Supp. Mot. Summ. J. 11. If ALPA believed this decision by FedEx was a disciplinary action, as it seems to suggest, then it should have brought this grievance before a new arbitration board pursuant to CBA proceedings. Pl.'s Opp'n Def.'s Mot. Summ. J. 10–11; CBA § 19. Even if the current dispute involves a

disciplinary matter, this Court does not have jurisdiction to determine a minor disciplinary dispute between the parties.

In conclusion, interpretation of the Award in question amounts to a "minor dispute." The specific issue at hand—whether Ahneman must be trained and assigned flying duties—was not before the Board in any manner. It was not brought to the Board's attention by the plaintiff and was not explicitly considered in the Board's decision. The present dispute, therefore, falls under the exclusive jurisdiction of the System Board. This Court may not "enforce" the Award—even if it was able to—without infringing on the Board's jurisdiction under the RLA.

Though dealt with at length by the parties, the Court need not consider whether the Award qualifies for the "public policy" exception to enforcement. Def.'s Memo. Supp. Mot. Summ. J. 28–29. This point is moot because the issue at hand is a minor dispute, involving interpretation of the Agreement not addressed by the awarding Board. The Award, therefore, cannot be enforced by this Court with regard to plaintiff's complaint.

Also, the issue of additional compensation raised in later pleadings hinges on the training and flight assignment dispute and, consequently, is also outside the realm of this Court's jurisdiction.

ALPA's complaint asks this Court to exceed its jurisdictional boundaries and decide a minor dispute amongst the parties. If ALPA wishes to challenge FedEx's refusal to train Ahneman and assign flight duties to her, it must do so in the proper forum—before a system advisory board.

**CONCLUSION**

For the foregoing reasons, petitioner's motion for judgment on the pleadings or, in the alternative, summary judgment will be DENIED, respondent's motion for summary judgment

will be GRANTED, and petitioner's claim will be DISMISSED. A separate order consistent with this Memorandum Opinion shall issue this date, September 28, 2015.

                                                                                  ROYCE C. LAMBERTH
                                                                                  United States District Judge